IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

NATIONAL CASUALTY COMPANY,　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　Plaintiff,　　)
　　　　　　　　　　　　　　　　　　　)
　　vs.　　　　　　　　　　　　　　　 )
　　　　　　　　　　　　　　　　　　　)
JESSIE L. BARKSDALE, ALASKA　　　　　)
SALES & SERVICE, d/b/a NATIONAL CAR  )
RENTAL/ALAMO, and CHARLENE MARIE　　 )
SEAMON,　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)　No. 4:17-cv-0028-HRH
　　　　　　　　　　　　Defendants.　 )
_____　)

O R D E R

Cross-motions for Summary Judgment

Plaintiff moves for summary judgment.[1] This motion is unopposed by defendant Alaska Sales & Service.[2] The motion is opposed by defendant Charlene Marie Seamon,[3] and she cross-moves for summary judgment.[4] The cross-motion is opposed.[5] Oral argument was not requested and is not deemed necessary.

---

[1]Docket No. 28.

[2]Docket No. 30.

[3]Docket No. 34.

[4]Docket No. 36.

[5]Docket No. 37.

Facts

Plaintiff is National Casualty Company. Defendants are Jessie L. Barksdale;[6] Alaska Sales & Service, Inc., d/b/a National Car Rental/Alamo;[7] and Charlene Marie Seamon.

Barksdale, who is retired, lives in Virginia. In the summer of 2016, Barksdale, his wife, and other relatives traveled to Alaska for a vacation. Barksdale rented a minivan from Alamo Car Rental in Anchorage on July 21, 2016. The rental was part of a package deal that Barksdale's travel agent, Linda Sizemore, arranged through Alaska Airlines for Barksdale and his wife. Barksdale declined additional insurance at the time of the rental[8] because he had $300,000 in liability insurance through his own liability carrier, USAA, that he understood applied to rental vehicles.[9] The rental agreement number was 534326725.[10] The rental agreement had a line that read: ACCOUNT Alaska Airlines" and a line that read:

---

[6]Barksdale has been defaulted. Docket No. 13.

[7]Alaska Sales & Service was a National Alamo franchisee; the parent company is Enterprise Holdings. Deposition of Jerry Lutton at 7:18-8:22, Exhibit 1, Seamon's Opposition [etc.], Docket No. 34.

[8]Rental Agreement at 1, Exhibit 1, Motion for Summary Judgment [etc.], Docket No. 28.

[9]Deposition of Jessie L. Barksdale at 22:9-12, Exhibit 3, Motion for Summary Judgment [etc.], Docket No. 28.

[10]Rental Agreement at 1, Exhibit 1, Motion for Summary Judgment [etc.], Docket No. 28.

"EXT REF # ALG2D240[.]"[11] The rental agreement listed two forms of payment: 1) an external tour voucher ALG2D240 and 2) a Visa.[12]

The rental agreement stated that the agreement included all provisions "contained within Alamo's rental agreement jacket. . . ."[13] The rental agreement jacket contained the following provision:

> Owner complies with applicable motor vehicle financial responsibility laws as a state-certified self-insurer, bondholder, or cash depositor. Except to the extent required by the motor financial responsibility laws of the applicable state or otherwise by law, Owner does not extend any of its motor vehicle financial responsibility or provide insurance coverage to Renter, [additional drivers], passengers or third parties through this Agreement. If valid automobile liability insurance or self insurance is available on any basis to Renter, [additional drivers] or any other driver and such insurance or self insurance satisfies the applicable state motor vehicle financial responsibility law, then Owner extends none of its motor vehicle financial responsibility. However, if Renter and [additional drivers] are in compliance with the terms and conditions of this Agreement and if Owner is obligated to extend its motor vehicle financial responsibility to renter, [additional drivers] or third parties, then Owner's obligation is limited to the applicable state minimum financial responsibility amounts.[14]

On July 27, 2016, Barksdale, while driving the rented minivan in Fairbanks, Alaska, was involved in an automobile accident. Seamon was seriously injured in the accident.

---

[11]Id.

[12]Id.

[13]Id.

[14]Exhibit 2 at 3, Motion for Summary Judgment [etc.], Docket No. 28.

Plaintiff had issued an insurance policy to Alaska Sales & Service, d/b/a Alamo, Policy Number CA07766664, which contained a Daily Auto Rental Endorsement.[15] The Endorsement provides that an "insured" includes a "'rentee[,]'" who is defined as "a holder of a 'rental agreement' with you which provides for the holder's use of an 'auto' for a period of less than one year."[16] A "rental agreement" is defined as "the 'auto' rental contract between you and the 'rentee.' This agreement states the limit of liability you are providing the 'rentee.'"[17]

Paragraph C in Section II of the Endorsement provides that the "Limit of Insurance" for a "rentee" "is the limit shown in the SCHEDULE of this endorsement or the limits specified by a compulsory or financial responsibility law of the jurisdiction in which the accident occurred."[18] The Schedule shows that the limit for "bodily injury" liability is $50,000 for each person and $100,000 for each accident and that the limit for "property damage" liability is $25,000 for each accident.[19] This complies with the mandatory minimum for bodily injury liability under Alaska law. AS 28.22.101(d).

---

[15] Exhibit 5 at 2, Motion for Summary Judgment [etc.], Docket No. 28. Alaska Sales & Service's yearly premium for this coverage was $212,500. Exhibit 5 at 1, Seamon's Opposition [etc.], Docket No. 34.

[16] Exhibit 5 at 2, 5, Motion for Summary Judgment [etc.], Docket No. 28.

[17] Id. at 5.

[18] Id. at 2.

[19] Id. at 3.

The Endorsement further provides:

> With respect to specific commercial accounts, if the Corporate Schedule below is filled in, the Limit Of Insurance for Liability Coverage for the "rentee" as stated in Item C. Limit Of Insurance of this endorsement is replaced by the following:
>
> C.  Limit Of Insurance
>
> The "rentee" limit of liability contained in a written "insured contract" between the "Insured" and specific commercial accounts designated by the "Insured" shall be considered to be the Limit of Liability contained in the "rental agreement"; however, our Limit of Liability for any "rentee" shall not exceed the limit stated in the Corporate Schedule of this endorsement.[20]

The Corporate Schedule is filled in on the Endorsement and provides for a Limit of Liability for bodily injury and property damage combined of $2,000,000 for each accident.[21]

Finally, the Endorsement provides:

> The Insurance provided by this policy for the "rentee" and any other person authorized by the "rental agreement" held by the "rentee," is subject to the terms, conditions, restrictions and limitations contained in the "rental agreement," provided however, that our Limit of Insurance for Liability Coverage will not exceed the limit shown in Section C. Limit Of Insurance of this endorsement.[22]

Seamon contends that plaintiff sold Alaska Sales & Service the policy that contained the Endorsement because in 2008, Alaska Sales & Service was directed by Alamo's parent

---

[20] Id. at 3.

[21] Id. at 4.

[22] Id.

-5-

company to obtain additional insurance coverage for certain commercial accounts that rented with Alamo.[23] More specifically, Alaska Sales & Service was to have an insurance policy that contained "[a]n endorsement providing coverage <u>over</u> the minimum financial responsibility limits to all commercial accounts that we have, by separate contract, agreed to provide. . . ."[24]

After the accident involving Barksdale and Seamon, plaintiff contends that, on Barksdale's account, it offered the $50,000 bodily injury limit of liability to Seamon. Plaintiff further contends that Seamon rejected that offer and demanded the $2 million limit of liability contained in the Corporate Schedule in the Endorsement.

Plaintiff commenced this action for declaratory relief on October 16, 2017. Plaintiff seeks a declaration "that the applicable liability limit under the National Casualty policy issued to Alamo, for vehicle renter Jessie L. Barksdale, is $50,000 for each person, as stated in the National Casualty policy, and not $2,000,000 as alluded to by defendant Seamon."[25]

Plaintiff now moves for summary judgment on its claim for declaratory relief. Seamon cross-moves for summary judgment that the applicable liability limit for Barksdale is $2,000,000.[26]

---

[23]Exhibit 6, Seamon's Opposition, Docket No. 34.

[24]Id. at 5 (emphasis added).

[25]Complaint for Declaratory Relief at 9, ¶ 1, Docket No. 1.

[26]In her opposition to plaintiff's motion for summary judgment and her cross-motion,
(continued...)

Discussion

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

This case involves the interpretation of an insurance contract under Alaska law. "The interpretation of contract language is a question of law. . . ." Dugan v. Atlanta Cas. Companies, 113 P.3d 652, 654 (Alaska 2005). "'In addressing the proper interpretation of an insurance policy," the court "'look[s] to (1) the language of the disputed provisions in the policy, (2) other provisions in the policy, (3) extrinsic evidence, and (4) case law interpreting similar provisions.'" Hahn v. GEICO Choice Ins. Co., 420 P.3d 1160, 1170 (Alaska 2018) (quoting State Farm Mut. Auto. Ins. Co. v. Houle, 269 P.3d 654, 657-58 (Alaska 2011)). "'Because an insurance policy is a contract of adhesion, [the court] construe[s] grants of coverage broadly and interpret[s] exclusions narrowly.'" Id. (quoting Houle, 269 P.3d at 658). "Under Alaska law, '[i]nsurance contracts are interpreted in accordance with the reasonable expectations of the insured. This is true even if painstaking study of the policy provisions would have negated those expectations.'" Id. (quoting Safety Nat'l Cas. Corp. v. Pac. Emp'rs Ins. Co., 927 P.2d 748, 750 (Alaska 1996)). "Insurance contracts are also

---

[26](...continued)
Seamon states that the issue here is whether Barksdale is entitled to $50,000 or $2,000,000 in liability coverage. But, as plaintiff points out in its reply, if the Limit of Liability in the Corporate Schedule apply, that means that Barksdale would be entitled to up to $2,000,000 in liability coverage. The amount of Seamon's total claim for bodily injury is not before this court (although Seamon contends that her medical bills have exceeded $3 million). The only issue here is how much coverage is available to Barksdale.

construed according to 'ordinary and customary usage.'" Id. at 1171 (quoting Houle, 269 P.3d at 658). "Any ambiguous terms are to be construed in favor of the insured." Id. "However, 'ambiguities only exist when there are two or more reasonable interpretations of particular policy language.'" Id. (quoting Houle, 269 P.3d at 658).

Although the definition section of the Endorsement does not contain a definition for "specific commercial account," the Endorsement is not ambiguous. The Limit of Insurance for Liability Coverage is stated in Paragraph C of Section II of the Endorsement. Paragraph C provides that the limit for liability coverage for a "'rentee' is the limit shown in the SCHEDULE of this endorsement. . . ."[27] The SCHEDULE shows a $50,000 limit for bodily injury liability for each person.[28]

The Endorsement further provides:

> With respect to specific commercial accounts, if the Corporate Schedule below is filled in, the Limit Of Insurance for Liability Coverage for the "rentee" as stated in Item C. Limit Of Insurance of this endorsement is replaced by the following:
>
> C.   Limit Of Insurance
>
> The "rentee" limit of liability contained in a written "Insured contract" between the "Insured" and specific commercial accounts designated by the "Insured" shall be considered to be the Limit of Liability contained in the "rental agreement"; however, our Limit of Liability for any "rentee" shall not exceed

---

[27]Exhibit 5 at 2, Motion for Summary Judgment, Docket No. 28.

[28]Id. at 3.

>       the limit stated in the Corporate Schedule of this endorsement.[29]

The Corporate Schedule in the Endorsement provides for a Limit of Liability for bodily injury and property damage combined of $2,000,000 for each accident.[30] Paragraph C, as it pertains to "specific commercial accounts[,]" unambiguously states that in order for the limit of liability in the Corporate Schedule to apply there must be a written contract between Alamo and a corporate or commercial entity that provides for additional liability insurance.

There is no such contract between Alamo and Alaska Airlines. Seamon concedes that "the Alaska Airlines/Alamo 'Corporate Agreement' does not provide for additional liability insurance."[31] Moreover, Jerry Lutton, who was the general manager of Alaska Sales and Service, testified that the reference on Barksdale's rental agreement to Alaska Airlines indicated that the reservation had been made through Alaska Airlines and that the reference number was for a tour account, not a corporate account.[32] Lutton further testified that Alamo's parent company "verified that it was a tour account."[33] Lutton testified that one could tell by looking at the rental agreement "that Alaska Airlines was not a corporate

---

[29]Id.

[30]Id. at 4.

[31]Seamon's Opposition at 5, Docket No. 34.

[32]Lutton Deposition at 7:6-10; 15:7-13, Exhibit 4, Motion for Summary Judgment [etc.], Docket No. 28.

[33]Id. at 29:8-16.

account" because Barksdale "rented utilizing and under a booking through Alaska Airlines with an external tour voucher, which is not a corporate account."[34] Alaska Airlines had a Tour Agreement with Alamo that was in effect at the time of the Barksdale rental.[35] That agreement provides that renters in the United States are provided "third party liability protection in an amount equal to the minimum financial responsibility limits applicable to the Vehicle[,]"[36] which is consistent with the information provided to Barksdale in the rental agreement jacket.

The court's interpretation of the Endorsement is consistent with the insured's reasonable expectations. The "insured" in this case is Barksdale. It is undisputed that Barksdale did not purchase the optional third party bodily injury insurance when he rented the minivan. Barksdale testified that he declined the optional insurance because he had $300,000 in liability insurance for rental vehicles through his own insurance policy through USAA.[37] Barksdale testified that by signing the rental agreement, he knew that he was bound to the terms of the rental agreement.[38] The rental agreement jacket, which is part of the rental agreement, provides that "[i]f Owner is obligated to extend its motor vehicle financial

---

[34]Lutton Deposition at 28:3-11, Exhibit 1, Seamon's Opposition [etc.], Docket No. 34.

[35]Exhibit 7 at 1, Reply to Seamon's Opposition [etc.], Docket No. 37.

[36]Id. at 7.

[37]Barksdale Deposition at 22:9-18, Exhibit 3, Motion for Summary Judgment [etc.], Docket No. 28.

[38]Id. at 23:1-5.

responsibility to Renter, . . . then Owner's obligation is limited to the applicable state minimum financial responsibility amounts."[39] Thus, Barksdale could have only reasonably expected that coverage would be Alaska's minimum financial responsibility amount, which is the amount shown on the Schedule in the Endorsement, or $50,000.

As Seamon points out, the reasonable expectation standard is an objective standard, not a subjective standard. See Deland v. Old Republic Life Ins. Co., 758 F.2d 1331, 1335 (9th Cir. 1985) (quoting Starry v. Horace Mann Ins. Co., 649 P.2d 937, 939 (Alaska 1982) ("Alaska case law establishes that the standard of what 'a layperson would reasonably have expected' is an objective standard based on the expectations of a hypothetical layperson"). But, that does not make what Barksdale thought or believed irrelevant. Barksdale's expectations are relevant because "[t]he insured must demonstrate through extrinsic evidence that its expectation of coverage was based on specific facts which make these expectations reasonable." O'Neill Investigations, Inc. v. Illinois Emp. Ins. of Wausau, 636 P.2d 1170, 1177 (Alaska 1981).

Seamon argues, however, that Barksdale could not have had any reasonable expectations about additional insurance from Alamo because he was not told anything about any additional insurance at the Alamo counter. Barksdale testified that he did not learn about the coverage provided by plaintiff until weeks after the accident and that the only conversation that occurred at the Alamo rental counter was the agent asked if he wanted

---

[39]Exhibit 2 at 3, Motion for Summary Judgment [etc.], Docket No. 28.

insurance; he said no; and then he was asked to initial each box indicating that he had declined additional insurance.[40] The question here, according to Seamon, is what coverage would a hypothetical, reasonable layperson, looking at the Endorsement, believe he had. Seamon argues that, based on the rental agreement, a reasonable layperson would believe he had up to $2,000,000 in liability coverage because the account listed on the agreement was Alaska Airlines.

But the fact that Alaska Airlines is listed on Barksdale's rental agreement does not mean that the limit of liability coverage in the Corporate Schedule applies. In making her argument, Seamon focuses on the "[w]ith respect to specific commercial accounts" language in the Endorsement.[41] She argues that the fact that Barksdale's rental agreement listed Alaska Airlines after the word "Account" means that Barksdale rental involved a "specific commercial account." Seamon argues that the only condition contained in the Endorsement for the Corporate Schedule to apply is that the rental must have been "[w]ith respect to [a] specific commercial account[.]"[42] Seamon argues that this is very broad language and Barksdale's rental agreement plainly falls within this broad language because it listed the "Account" as "Alaska Airlines." Seamon argues that Alaska Airlines is specific and that it is undisputedly a "commercial" entity. She insists that the Endorsement unambiguously

---

[40]Barksdale Deposition at 31-32, Exhibit 3, Seamon's Opposition [etc.], Docket No. 34.

[41]Exhibit 5 at 3, Motion for Summary Judgment, Docket No. 28.

[42]Id.

states that the Corporate Schedule applies if Alamo identifies a "specific commercial account," which Alamo did for Barksdale's rental.

Seamon's interpretation of the Endorsement is unreasonable. She is arguing that the Endorsement provides that "specific commercial accounts" are entitled to coverage under the Corporate Schedule and that Alaska Airlines is specific and a commercial entity. But, Seamon is ignoring the rest of the language in the Endorsement as it pertains to the Corporate Schedule. The Endorsement does not state that the Corporate Schedule applies as long as the rental involves a "specific commercial account." It states that "with respect to specific commercial accounts", Paragraph C of the Endorsement "is replaced" with the language about a written "insured contract" between Alamo and designated commercial or corporate accounts. The Endorsement unambiguously provides that there must be a written "insured contract" between Alamo and a corporate entity that Alamo (or its parent company) has designated as being entitled to additional liability coverage. There is no evidence here of there being such an account between Alamo and Alaska Airlines.

Seamon argues, however, that this interpretation of the Endorsement makes the $2,000,000 in liability coverage illusory. "Illusory promises are those that by their terms make performance entirely optional with the promisor." Askinuk Corp. v. Lower Yukon School Dist., 214 P.3d 259, 267 (Alaska 2009) (citation omitted). Seamon contends this interpretation would mean that the $2,000,000 in liability coverage is only available if plaintiff decides, after the fact, that the rental involved a specific commercial account.

Lutton testified that Alaska Sales & Service did not have a list of specific commercial accounts that were designated for the $2,000,000 in coverage[43] and that there are thousands of corporate accounts.[44]

The $2,000,000 in coverage is not illusory. Plaintiff is not deciding, after the fact, what commercial accounts are entitled to additional insurance coverage and which are not. Rather, the Endorsement unambiguously provides that there must be an "insured contract" between Alamo and a commercial or corporate entity in order for the limits in the Corporate Schedule to apply. Either there is such a contract or there is not. Here, there is no evidence that Alamo had a contract with Alaska Airlines that entitled Alaska Airlines tour package renters to additional liability insurance.

Seamon also argues that it is important that plaintiff apparently sold Alaska Sales & Service the policy that contained the Endorsement pursuant to the directive from the parent company in 2008 about obtaining additional insurance for certain commercial accounts. Seamon argues that this additional insurance was apparently being offered so that Alamo could generate business from commercial accounts like Alaska Airlines, but that after providing this additional coverage, plaintiff did nothing except collect a $212,500 yearly premium. But, the 2008 directive to Alaska Sales & Service to provide additional insurance for commercial accounts makes it clear that this coverage was intended for renters who

---

[43]Lutton Deposition at 62:7-9, Exhibit 1, Seamon's Opposition [etc.], Docket No. 34.

[44]Id. at 14:12-15.

rented a vehicle pursuant to a corporate agreement between Alamo and the corporation, which is not what Barksdale did. He rented the minivan as part of a tour package booked through Alaska Airlines.

Seamon also makes much of the fact that Alaska Airlines paid Alamo for the rental, rather than Barksdale paying Alamo directly. Sizemore avers that Barksdale did not pay Alamo directly for the rental, but that he paid her, she then paid Alaska Airlines, and Alaska Airlines then paid Alamo.[45] Lutton testified that Alaska Sales and Service received payment for tour account rentals on a monthly basis from Alamo's parent company and that he assumed that for the Barksdale rental, Alaska Airlines paid the parent company for the rental.[46] Lutton further testified that "[i]n a very broad sense," "Alaska Airlines" would show up next to the word "Account" on a rental agreement if the renter paid Alaska Airlines for the rental and then Alaska Airlines paid Alamo.[47] Lutton testified that other than prepayment, he did not know of any other reason that "Alaska Airlines" would show up on a rental agreement after the word "Account."[48] Because Alaska Airlines paid Alamo for the Barksdale rental, Seamon argues that the rental involved a "specific commercial account," and thus the Limit of Liability in the Corporate Schedule should apply here. Seamon

---

[45]Affidavit of Linda Sizemore at 4, ¶ 7, Docket No. 35.

[46]Lutton Deposition at 53:12-54:4, Exhibit 1, Seamon's Opposition [etc.], Docket No. 34.

[47]Id. at 67:23-68:8.

[48]Id. at 116:15-117:8.

contends that Barksdale paid more for the rental by having Alaska Airlines involved in the rental and that he should receive the benefits of that involvement, which, according to Seamon, includes additional insurance.

That Alaska Airlines paid Alamo for the rental does not mean that the Corporate Schedule applies here. All that means is that Barksdale rented the minivan as part of an Alaska Airlines tour package and that rental was paid for with a tour voucher. Barksdale may have paid more for the rental because it was booked as part of a tour package, but that does not mean that he is entitled to additional insurance.

Seamon next points out that the rental agreement jacket provides that "[i]f valid automobile liability insurance or self insurance . . . satisfies the applicable state motor vehicle financial responsibility law, then Owner extends none of its motor vehicle financial responsibility."[49] Seamon reads this to mean that there would be no insurance coverage under plaintiff's policy if renters have sufficient personal insurance, which Seamon argues means that all the coverage offered under the Endorsement is illusory.

The coverage under the Endorsement is not illusory. This provision simply means that plaintiff's insurance is secondary coverage, not primary coverage.

Seamon also makes much of the fact that Barksdale was never told by Alamo that he was covered under the Endorsement, but there is no requirement that Alamo had to advise renters about the coverage under the Endorsement. And, if a renter were to actually read his

---

[49]Exhibit 2 at 3, Motion for Summary Judgment [etc.], Docket No. 28.

rental agreement, which included the information in the rental agreement jacket,[50] he would have been informed that Alamo provided coverage that met the state minimal financial responsibility requirements.

Finally, Seamon cites to a statement made by plaintiff's counsel during Lutton's deposition. Plaintiff's lawyer asked Lutton:

> You know, for the last year and a half I've been trying to clear it up in my own mind of how it is then that [it] is established [that it is a] corporate account. I mean is it C.A.? Is it something else? Will there be a distinction on one of these screens that says this person is part of a corporate account? . . . I'm struggling to find out how it is when I look at a document that you receive when the renter shows up whether it's a corporate account or not.[51]

Seamon argues that this is strong evidence that the Endorsement is ambiguous, given that plaintiff's own lawyer could not tell what coverage limit applies here.

A statement by a lawyer at a deposition is not evidence that the Endorsement is ambiguous. As explained above, the Endorsement is not ambiguous. It provides that in order for the Corporate Schedule to apply, there must be a written agreement between Alamo and a corporate or commercial entity that Alamo will provide additional insurance. There

---

[50]Seamon points out that the font used in the rental jacket agreement is very small, the insurance language contained therein is not conspicuous, and no one at Alamo drew Barksdale's attention to this language. But none of that means that Barksdale would not have been able to read the rental jacket agreement if he so desired.

[51]Lutton Deposition at 20:14-21:4, Exhibit 1, Seamon's Opposition [etc.], Docket No. 34.

was no such agreement between Alamo and Alaska Airlines.  Barksdale's liability coverage for bodily injury is thus limited to $50,000.

## Conclusion

Plaintiff's motion for summary judgment is granted.  The clerk of court shall enter judgment in plaintiff's favor declaring that the applicable liability limits under Policy Number CA07766664 for vehicle renter Jessie L. Barksdale are $50,000 per person for bodily injury, $100,000 per accident for bodily injury, and $25,000 per accident for property damage.

DATED at Anchorage, Alaska, this 23rd day of May, 2019.

/s/ H. Russel Holland
United States District Judge